IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL JURISDICTION

CASE NO.: _____

ARI FINANCIAL GROUP, INC.,

      Plaintiff,

v.

JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ARI FINANCIAL GROUP, INC., by and through undersigned counsel, sues Defendants, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, and alleges as follows:

## INTRODUCTION

1.      This is an action for injunctive relief arising from Defendants' theft and improper use of Plaintiff's trade secrets and confidential information, and for damages estimated to be in excess of $750,000, exclusive of interest, costs, and attorneys' fees.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, ARI FINANCIAL GROUP, INC. ("**AFG**"), is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

3.      Defendant, JOSEF SCHIFFER ("**Schiffer**"), is an individual that resides in Miami-Dade County and is *sui juris*.

4.      Defendant, PROSPEROUS FINANCIAL GROUP, LLC, ("**Prosperous**") is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Schiffer is the sole managing manager of Prosperous.

5.      Jurisdiction and venue are proper in this Court because all or a substantial part of the events or omissions giving rise to the claims in this action occurred in Miami-Dade County and because the parties in this case are all Miami-Dade residents.

6.      Further, the instant case is subject to assignment to the Complex Business Litigation division pursuant to the mandatory assignment criteria, or at a minimum the discretionary criteria, set forth in FL ST 11 J CIR 17-11.

## GENERAL ALLEGATIONS

A.      **AFG's Business.**

7.      AFG is a boutique financial firm located in Aventura, Florida that specializes in advanced life insurance concepts and premium financing services designed to help grow and conserve wealth through customized solutions, personalized service, and creative planning.

8.      AFG collaborates with financial institutions to assist AFG's clients with financing their insurance premiums, obtaining satisfactory life insurance policies, and otherwise contributing to their financial portfolios.

9.      In order to maintain and enhance its competitive position, AFG creates, compiles, and maintains highly confidential and sensitive information related to its business, its clients, and its partnerships. Such information includes, among other things: actual and prospective client information, referral source information, financial information regarding life insurance policy and premium financing analysis, and a comprehensive database of all relevant business and financial

information regarding the life insurance and financial products that AFG advises, consults, and sells (individually and collectively, the "**Confidential Information**.").

10.     One such key component of AFG's Confidential Information is a customized software program developed by AFG at significant expense which contains projections, calculations, key information for providers, and other proprietary information and financing information (the "**Software**") utilized by AFG in its daily business dealings with potential and actual clients to model premium financing transactions.

11.     The Software was developed over a period of years at tremendous effort and expense to AFG, and AFG pays a significant annual expense maintaining and updating the Software for its continuous use.  The Software gives AFG a significant advantage in the market.

12.     Separate from the Software, AFG's "digital library" is a key part of AFG's Confidential Information.  AFG's digital library is primarily comprised of illustrations utilized by AFG in connection with its customers and potential customers and their business.  AFG's digital library was also compiled through significant effort and expense using AFG's Confidential Information and analysis.

13.     AFG's Software, digital library and illustrations gives AFG a significant competitive advantage in the marketplace, and its use by any former employee or third party would be highly detrimental to AFG's business.  AFG carefully protects its Confidential Information, including its Software, digital library, and illustrations for this reason.

14.     AFG's Confidential Information provides the company with an economic advantage, is generally unknown in the industry or otherwise, and has cost many thousands of dollars to create, develop, and maintain. Given its importance to its business, AFG maintains

Confidential Information as a secret, and takes necessary measures to prevent improper use and disclosure.

15.     Specifically, AFG requires all authorized agents who work with AFG to have access to Confidential Information to sign Non-Disclosure Agreements that prohibit the unauthorized use or disclosure of such Confidential Information, and prohibits agents from soliciting its current or prospective customers and from working for or with competitors in any capacity during employment or for a 24-month period following the end of their agency engagement with AFG.

16.     If a competitor of AFG were to have access to its Confidential Information or to its current and prospective customers, AFG would suffer severe, and potentially permanent, harm to its business and competitive position because a competitor could readily use such information to undercut AFG's business model, develop strategies to target its existing clients, misappropriate its goodwill with customers, and overall jeopardize AFG's competitive position in the market. A competitor with access to AFG's Confidential Information would have a substantial unfair competitive advantage in the market by not having to expend the time and resources to develop such information, relationships, and goodwill.

17.     AFG utilizes a variety of precautionary measures to safeguard and protect its business information and prevent the unauthorized use thereof and disclosure to competitors and other third parties.

**B.     Schiffer's Association as an Authorized Representative With AFG.**

18.     Schiffer worked for AFG first as an intern and subsequently as an independent sales agent (called an "**Authorized Representative**"), through which arrangement he received advances against commissions.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

19.     As part of his retention, Schiffer signed a Non-Disclosure Agreement with AFG on July 27, 2018. *See* Schiffer Non-Disclosure Agreement, attached hereto as Exhibit A (the "**Agreement**"). As discussed *supra*, the Agreement served to protect AFG's business relationships, trade secrets, and confidential information, and sought to enjoin Schiffer from competing with AFG following termination of his agent relationship.

20.     As an Authorized Representative, Schiffer had access to AFG's prospective and actual clients, their information, and the information of AFG's business partners. He also received training and education in the field as part of his relationship with AFG.

21.     During his association as an agent with AFG, Schiffer was given access to AFG's Confidential Information in order to perform and thrive in his role as an Authorized Agent, as well as maintain and build business relationships with the benefit of AFG's Confidential Information.

22.     Schiffer also had access to AFG's Confidential Information by virtue of his access to AFG's company offices, computer network, and data files.

23.     After less than two (2) years at AFG, Schiffer's agency relationship with AFG was terminated.

**C.     Schiffer Entered into Restrictive Covenants with AFG and Related Companies**

24.     The Agreement restricted Schiffer from using, communicating, revealing, disclosing or otherwise making available or taking advantage of AFG's Confidential Information, including, but not limited to, the Software, digital library, documents, records, information and data (whether verbal, electronic or written), drawings, models, apparatus, sketches, designs, schedules, product plans, marketing plans, technical procedures, manufacturing processes, analyses, compilations, studies, software, know-how, and other business information relating to AFG's business, assets, operations or contracts, furnished to Schiffer in the course of his work

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

contemplated in the Agreement, regardless of whether such Confidential Information had been expressly designated as confidential or proprietary, for any purpose whatsoever, or to divulge or disclose such information to any agents insurance company, lender, current or prospective competitor to the Program, or other party not reasonably judged to be an individual client or prospective individual client of AFG. *See* Ex. A at ¶ 5.

25.      Additionally, in the Agreement, Schiffer agreed that during the term of his engagement with AFG and for a period of two (2) years after termination such engagement, not to bypass or go around AFG and attempt to contact or establish a relationship with any Institution introduced to Schiffer by AFG or as a result of his relationship with AFG for any form or variation of premium financing, or to market or provide to any client any product competitive with AFG's business, that does not include AFG or have AFG's consent to do so. *Id*. at ¶ 11.

26.      By signing the Agreement, Schiffer expressly acknowledged that (i) his fulfilment of the obligations contained in the Agreement was necessary to protect AFG's confidential and proprietary information and trade secrets, and to preserve AFG's legitimate business interests, including its value and goodwill, and (ii) the period of time and the area specified in Agreement were reasonable in view of the nature of AFG's business. *Id*.

27.      The active, ongoing, and substantial relationships that AFG fostered and maintains with its existing customers and insurers are protectable under Florida law.

28.      Schiffer was aware of, and maintained, certain of AFG's client relationships during his employment with AFG, and was also given access to the Confidential Information.  This includes the valuable information contained in AFG's Software and the digital library and illustrations.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

D.      **Schiffer Breached the Agreement and Has Improperly Interfered with AFG's Business**

29.      Schiffer's relationship with AFG was terminated in February 2020.

30.      Despite the restrictions and obligations set forth in his Agreement which continued post-separation from AFG, during or following his engagement with AFG Schiffer improperly obtained highly confidential materials and information, including the Confidential Information, either directly from AFG's servers or from other AFG agents, employees, or both, and retained those materials and information for use after his resignation.

31.      Specifically, Schiffer copied marketing materials and illustrations from the AFG company hard drive that were custom built for AFG prospects, which he then tried to present as having development by himself and/or Prosperous, including illustrations that were intended for at least one AFG prospective client which Schiffer took and converted to a PowerPoint Presentation for Prosperous.[1]

32.      Upon his resignation from AFG, Schiffer used the special knowledge, training, and confidential information he gained and/or stole from AFG for Prosperous, the business he formed to compete with AFG.

33.      Prosperous was formed and registered with the Florida Department of Corporations on October 23, 2020.

34.      Following the establishment of Prosperous, Schiffer contacted AFG agents with surreptitious motives.

35.      A former Prosperous employee confirmed that Schiffer approached AFG agents and attempted to use AFG's Confidential Information.

---

[1] Due to the confidential nature of the illustrations and the identity of AFG's client in this regard, such information is not included in this Complaint.  However, this information will be provided to the Court under separate cover for in camera review at the appropriate time.

36.     Specifically, Schiffer improperly used proprietary excel models from AFG containing Confidential Information, an illustration for a prospective client, proprietary marketing materials, and others. Schiffer concealed this improper use of of AFG's materials.

37.     Additionally, Schiffer reached out to AFG's agents to try to recruit them to work for Prosperous, and to convince them to misappropriate Confidential Information and turn it over to Schiffer.

38.     Schiffer then contacted current AFG clients and agents in direct violation of the Agreement, and sent them invitations to the opening of the Prosperous office. This was clearly an attempt by Schiffer to improperly solicit AFG's clients and agents to do business with Prosperous rather than AFG.

39.     Upon information and belief, in addition to the above breaches of the Agreement, AFG has learned that Schiffer has openly expressed his intention to target and contact AFG clientsand strategic partners to do business with Prosperous rather than AFG.

**E.     Schiffer's Defamatory Conduct**

40.     AFG has learned that Schiffer has been continuously speaking negatively regarding AFG to AFG's prospective clients and strategic partners.

41.     Schiffer has also been personally attacking AFG's Principal and CEO to potential prospects, current business prospects, and the community in which they work and live.

42.     Schiffer also directly contacted other AFG strategic partners in an attempt to interfere with AFG's relationships by, among other things, making disparaging remarks about AFG in an attempt to damage AFG's reputation.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

43.     Schiffer's intentions in this regard are apparent – he is boldly breaching the terms of his Agreement and making defamatory statements in an effort to harm AFG and solicit AFG's prospective clients, agents, and strategic partners.

44.     All conditions precedent have been satisfied by Plaintiff, or have been waived by Defendants.

45.     Plaintiff has retained the undersigned law firm to represent it in this matter and is obligated to pay its attorneys a reasonable fee.

## COUNT I – BREACH OF CONTRACT
### (Against Schiffer)

46.     Plaintiff, AFG, re-incorporates and re-alleges the allegation contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

47.     This is a claim for breach of contract and enforcement of restrictive covenants against Schiffer.

48.     The Agreement, a copy of which is attached as Exhibit A, is enforceable and supported by adequate consideration.

49.     In exchange for Schiffer's employment and continued employment with AFG, he agreed to be bound by all restrictive covenants within the Agreement.

50.     The restrictive covenants set forth in the Agreement are necessary, reasonable, and supported by adequate consideration.

51.     Prior to and subsequent to the termination of his employment with AFG, Schiffer directly and flagrantly breached the express terms of the Agreement by: (a) utilizing AFG's confidential business information to compete against AFG, including creating a competing business through Prosperous ; (b) utilizing AFG's confidential business information to contact and do business with AFG's past, present, and prospective clients; (c) utilizing AFG's confidential

9

business information to contact and do business with AFG's past, present, and prospective financial institutions and insurers; and (d) divulging AFG's confidential business information and using such confidential information for his unlawful competition in violation of the Agreement, all to the detriment of AFG.

52.     AFG has been damaged as a direct and proximate result of Schiffer's breaches of the Agreement.

53.     AFG is entitled to recover at a minimum liquidated damages, attorneys' fees and costs for bringing this action as set forth in Paragraph 9(A) of Schiffer's Agreement, and Fla. Stat. § 542.335(k).

**WHEREFORE**, Plaintiff, ARI FINANCIAL GROUP, INC. respectfully demands judgment against Defendant, JOSEF SCHIFFER, for compensatory damages, special damages including but not limited to lost profits, interest, an award of AFG's costs and attorneys' fees, and for such other relief as this Court deems just and proper.

## COUNT II – TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
### (Against Schiffer and Prosperous)

54.     Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

55.     This is an action for temporary and permanent injunctive relief pursuant to the Agreement, a copy of which is attached as Exhibit A, and Fla. Stat. § 542.335(1)(j).

56.     AFG has a clear right to prevent Schiffer from violating the Agreement and restrictive covenants contained therein.

57.     AFG also has a clear right to prevent Schiffer from violating the Agreement and restrictive covenants contained therein by using Prosperous directly and/or indirectly to participate in business or other activity that competes with AFG by providing services similar to those

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

provided by AFG using AFG's confidential information and business and client contacts, and to prevent the poaching of AFG's existing clients.

58.     Schiffer directly and flagrantly breached the express terms of the Agreement by: (a) utilizing AFG's confidential business information to compete against AFG, including creating a competing business through Prosperous; (b) utilizing AFG's confidential business information to contact and do business with AFG's past, present, and prospective clients; (c) utilizing AFG's confidential business information to contact and do business with AFG's past, present, and prospective financial institutions and insurers; and (d) divulging AFG's confidential business information and using such confidential information for his unlawful competition in violation of the Agreement, all to the detriment of AFG.

59.     Schiffer used and continue to improperly use AFG's confidential business information gained as a result of his employment with AFG in an attempt to benefit himself, Prosperous, to the detriment of AFG.

60.     AFG has been harmed by Schiffer's conduct, and risks continued irreparable harm in the event Schiffer's actions are not immediately enjoined.

61.     The harm to AFG if the Court denies injunctive relief outweighs any potential harm to Schiffer if injunctive relief is granted. Unless Schiffer and any third parties who are in active concert or participation with him are enjoined against Schiffer's violations of the Agreement, AFG will continue to suffer irreparable injury and harm in the form of, among other things:

a.     Loss of clients and client accounts;

b.     The unauthorized use and/or disclosure of AFG's customer information, financial information, and other confidential and proprietary information;

c.     Present economic loss, which is unascertainable at this time, and future economic loss, which is incalculable; and

d.      Loss of customer goodwill, damage to client and carrier relationships, loss of market position and reputation in the industry, and damage to its valuable competitive advantage, all of which cannot be compensated by an award of damages.

62.      The equities weigh in favor of AFG because the injuries and threatened injuries to AFG outweigh any harm an injunction poses to Schiffer.

63.      AFG has a substantial likelihood of success on the merits.

64.      The public has a vested interest in ensuring the sanctity of contracts and the protection of confidential information and the type of improper competition engaged in by Schiffer.

65.      Pursuant to Paragraph 13 of the Agreement, Schiffer acknowledged and agreed that AFG is entitled to seek equitable relief in the event of his breach of the Agreement, and that AFG is not required to post a bond or other security.

66.      As a result of Schiffer's violation of the restrictive covenants contained within the Agreement, AFG is entitled to recover attorneys' fees and costs for bringing this action as set forth in Paragraph 9(A) of the Agreement and Fla. Stat. § 542.335(k).

**WHEREFORE**, Plaintiff, ARI FINANCIAL GROUP, INC, respectfully demands that this Court enjoin Defendants, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, and all those acting in concert with them, or in furtherance of the violation of the Agreement from: (a) directly or indirectly contacting AFG's customers, referral sources, financial institutions and insurance carriers; (b) using and/or disclosing AFG's confidential and proprietary information; or (c) soliciting and conducting business with AFG's customers, referral sources, financial institutions and insurance carriers.  Plaintiff further demands that the Court enter an order: (a) requiring Schiffer to destroy all documents or materials containing AFG's confidential business information to AFG; (b) disgorging any profits realized by Schiffer as a result of his unlawful use

of AFG's confidential business information and/or trade secrets; (c) awarding AFG's costs and attorneys' fees; (d) enforcing all restrictive covenants within the Agreement against Schiffer and all those acting in concert with him, in violating the Agreement; and (e) granting such other relief as this Court deems just and proper.

### COUNT III – VIOLATION OF DEFEND TRADE SECRETS ACT
### (Against Schiffer and Prosperous)

67. Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

68. This is an action for violation of the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836, *et seq.*

69. Upon information and belief, Schiffer and Prosperous have engaged in the actual or threatened misappropriation of AFG's Confidential Information, in violation of the DTSA.

70. The Confidential Information is related to services provided by AFG that are used in and intended for use in interstate commerce.

71. AFG lawfully owned the Confidential Information and took reasonable measures to keep the information confidential.

72. The Confidential Information is of independent economic value.

73. The actions of Schiffer and Prosperous were intentional, willful, outrageous, and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendants, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, for damages, costs, and interest, and for such other relief as the Court deems just and proper.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
### (Against Schiffer and Prosperous)

74.     Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

75.     This is an action for violation of the Florida Uniform Trade Secrets Act, Chapter 688.001 et seq. ("**FUTSA**").

76.     Schiffer and Prosperous have engaged in the actual or threatened misappropriation of AFG's Confidential Information in violation of common law and FUTSA.

77.     This information was secret, and AFG took reasonable steps to protect its secrecy.

78.     Schiffer and Prosperous knew or had reason to know that the Confidential Information was improperly obtained, or used improper means to obtain this information.

79.     The actions of Schiffer and Prosperous were intentional, willful, outrageous, and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendant, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, for damages, costs, and interest, and for such other relief as the Court deems just and proper.

## COUNT V - DEFAMATION PER SE
### (Against Schiffer)

80.     Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

81.     This is an action for defamation *per se* against Schiffer.

82.     Schiffer published false, defamatory statements to third parties regarding AFG's prospective clients, current clients, and members of the community regarding AFG's business practices.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

83.     These statements concerned a condition incompatible with the proper exercise of AFG's lawful business, trade, profession, or office, and were specifically intended to harm AFG's business reputation and lead others to question AFG's business practices.

84.     Schiffer published these statements despite knowing that the statements were utterly and completely false.

85.     As a direct and proximate result of Schiffer's defamation *per se*, AFG has suffered and will continue to suffer damages.

86.     AFG is not a public figure. Accordingly, AFG does not allege nor prove that Schiffer made the defamatory statements with actual malice.

87.     However, Schiffer knew that the statements he made were false when he made them or he made the statements with reckless disregard for their truth or falsity, and with reckless disregard for their adverse effect on AFG's reputation and business.

88.     Schiffer's actions were intentional, willful, outrageous, and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.  Accordingly, AFG reserves the right to assert a claim for punitive damages as well as a result of Defendant's conduct.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendant, JOSEF SCHIFFER, for compensatory damages, pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

## COUNT VI – DEFAMATION
### (Against Schiffer)

89.     Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1 through 45 as if set forth fully herein, and further alleges as follows:

90.     This is an action for defamation against Schiffer.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

91.     Schiffer maliciously spread false and defamatory statements about AFG's principals and business generally.

92.     Specifically, Schiffer also published false statements about AFG and its business practices to third parties and to AFG's prospective clients, current clients, and members of the community.

93.     Schiffer published the statements knowing they were false and was at least negligent in publishing these statements.

94.     In fact, Schiffer knew that the statements he made were false when he made them or he made the statements with reckless disregard for their truth or falsity, and with reckless disregard for their adverse effect on AFG's reputation and business.

95.     Schiffer's defamatory statements have damaged AFG.

96.     Schiffer's actions were intentional, willful, outrageous, and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.  Accordingly, AFG reserves the right to assert a claim for punitive damages as well as a result of Defendant's conduct.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendant, JOSEF SCHIFFER, for compensatory damages, pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

<u>**COUNT VII – TORTIOUS INTERFERENCE**</u>
<u>**(Against Schiffer and Prosperous)**</u>

97.     Plaintiff, AFG, re-incorporates and re-allege the allegations contained in paragraphs 1-18, 20-23, 27-28, 31-38, , 40-42, and 44-45 as if set forth fully herein, and further alleges as follows:

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

98.     This is a claim for tortious interference against Schiffer, which is brought in the alternative to Count I.[2]

99.     AFG has an ongoing contractual relationship with its agents pursuant to their association with AFG.

100.    Schiffer is aware of the agreements and the contractual relationship between AFG and these agents.

101.    Nevertheless, Schiffer intentionally and unjustifiably interfered with AFG contractual relationship with these AFG agents by directly or indirectly knowingly engaging in, conspiring with them to engage in, or causing the agents to engage in, conduct in violation of their contractual relationship with AFG, including, without limitation, attempting to convince them to divulge AFG's Confidential Information for the purpose of providing materials, products or services provided by AFG, and actively attempting to misappropriate knowledge from AFG's partners, agents and employees.

102.    At all times material hereto, Schiffer was aware of the business relationship between AFG and these agents.

103.    Nevertheless, Schiffer intentionally and unjustifiably interfered with AFG's business relationships with its clients by contacting present AFG employees, and inducing or attempting to induce AFG associates to cease doing business with AFG and divulge AFG's Confidential Information to Schiffer and Prosperous.

104.    Additionally, Schiffer also contacted AFG's current clients and business relationships in an attempt to poach them from AFG and/or to advance his own business, Prosperous Financial Group.

---

[2] This Count is plead in the alternative to Count I, assuming for these purposes only that an express agreement does not exist between AFG and Schiffer.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

105.     Schiffer's actions in this regard were taken to benefit himself individually and to benefit Prosperous.

106.     AFG has been damaged as a result of Schiffer's tortious interference.

107.     Schiffer was the proximate cause of damages suffered by AFG.

108.     Schiffer's actions were intentional, willful, outrageous, and malicious, justifying the imposition of injunctive relief and actual and exemplary damages.  Accordingly, Plaintiff reserves the right to assert a claim for punitive damages as well as a result of Defendants' conduct.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendants, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, for damages, costs, and interest, and for such other relief as the Court deems just and proper.

## COUNT VIII – UNJUST ENRICHMENT
### (Against Schiffer and Prosperous)

109.     Plaintiff, AFG, re-incorporates and re-alleges the allegations contained in paragraphs 1-18, 20-23, 27-28, 31-38, 40-42, and 44-45 as if set forth fully herein, and further alleges as follows:

110.     This is a claim for unjust enrichment against Schiffer, which is brought in the alternative to Count I.[3]

111.     AFG conferred a benefit Schiffer, by, *inter alia*, providing significant confidential information, client information, business relationships, marketing and training and other opportunities to Schiffer.

112.     Schiffer is using AFG's Confidential Information, client information, business relationships, marketing and training and other opportunities to start a competing business,

---

[3] This Count is plead in the alternative to Count I, assuming for these purposes only that an express agreement does not exist between AFG and Schiffer.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

Prosperous Financial Group.

113.    Thus, Schiffer has been enriched by the Confidential Information, client information, business relationships, marketing and training and other opportunities provided by AFG, which Schiffer now using for his own personal and financial gain.

114.    The Confidential Information, client information, business relationships, marketing and training and other opportunities were provided at AFG's significant expense and development time.

115.    Schiffer used the confidential information, client information, business relationships, marketing and training and other opportunities and appreciated the benefit conferred upon him by AFG but have failed to compensate AFG for the benefit of the confidential information, client information, business relationships, marketing and training and other opportunities.

116.    Schiffer's acceptance and retention of the benefits under such circumstances make it inequitable and against good conscience for Schiffer to retain the benefit without paying AFG the value of the benefits.

117.    Schiffer's actions in this regard were taken to benefit himself individually and to benefit Prosperous.

**WHEREFORE,** Plaintiff, ARI FINANCIAL GROUP, INC., demands judgment against Defendants, JOSEF SCHIFFER and PROSPEROUS FINANCIAL GROUP, LLC, for damages, costs, and interest, and for such other relief as the Court deems just and proper.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• CITIGROUP CENTER, 27TH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN,**
**KATZEN & LEVINE, P.L.**
*Counsel for Plaintiffs*
Miami Center, 27th Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 379-9000
Facsimile:   (305) 379-3428

By: */s/ Abbey L. Kaplan*
Abbey L. Kaplan
Fla. Bar No. 200255
akaplan@klugerkaplan.com
Josh M. Rubens
Fla. Bar No. 77603
jrubens@klugerkaplan.com
Michael T. Landen
Fla. Bar No. 161144
mlanden@klugerkaplan.com

## ARI FINANCIAL GROUP, INC.
## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (the "Agreement") is made by and between ARI Financial Group, Inc. (hereafter referred to as "AFG"), having offices at 18851 NE 29th Avenue, Suite 413, Aventura, FL 33180, and _Josef Schuller_ (hereafter referred to as "Authorized Representative", and together with AFG and the Company, the "Parties"), on the last date acknowledged below.

## W I T N E S S E T H:

**WHEREAS,** AFG has certain rights and privileges with respect to the premium finance division of the Company. For the avoidance of doubt, those rights and privileges include the following programs and strategies/solutions of AFG (or any variations thereof), all of which are proprietary to AFG and shall be considered know-how (as defined herein): (i) Insurance Planning Solution: Premium Financed Life Insurance; (ii) Pension Plan Solution: Defined Benefit Plan (Fully Insured); (iii) Foreign National Estate Planning Solution: Premium Financing; (iv) Estate Planning Solution: Multigenerational Planning; and (v) IRA Solution: Annuity Arbitrage (such programs and strategies/solutions each referred to herein as the "Program" or collectively, the "Programs"); and

**WHEREAS,** AFG has, through the Company, affiliated itself with one or more insurance companies (hereafter referred to as the "Insurance Companies"), which have agreed to supply insurance products to facilitate the Programs. Within the Programs and pursuant at all times to the terms, provisions, and restrictions of this Agreement, Authorized Representative may sell only products of the approved Insurance Companies to clients wishing to participate in one or more of the Programs; and

**WHEREAS,** AFG has identified and developed relationships with a number of financial institutions, hereafter referred to as the "Institutions," that lend money for the financing of insurance premiums under the Programs; and

**WHEREAS,** AFG has brought services and products of the Insurance Companies and the Institutions together in order to create and implement the Programs, which supply insurance products to clients using money borrowed from the Institutions to pay for the insurance products. The combination of the Program, associations, contracts, analyses, work product, spread sheets, methods, marketing materials, and systems developed by AFG are considered the proprietary know-how of AFG (the "Know-How"); and

**WHEREAS,** AFG and Authorized Representative desire to enter into this Agreement and work together using AFG's know-how for their mutual benefit to achieve effective marketing of the Insurance Companies' products and to make the Programs available to suitable clients who desire to participate in the Programs, which the Parties believe will mutually benefit AFG, the Authorized Representative, and the Company; and

**WHEREAS,** to allow the Authorized Representative to properly assist in marketing and

1

**EXHIBIT A**

making available the Programs, AFG intends to make available to the Authorized Representative its Know-How during the term of this Agreement.

      **NOW, THEREFORE,** in consideration of the mutual promises and covenants herein set forth, and for other good and valuable consideration, the Parties AGREE as follows:

## 1.  GRANT OF RIGHTS:

Authorized Representative shall have no rights, powers or authority to use AFG's Know-How other than as expressly granted in this Agreement, and no other or greater right, power or authority shall be implied by the grant or denial of rights, powers or authority specifically stated herein.

During the term of this Agreement, AFG hereby grants Authorized Representative the limited and revocable rights to:
a.  Use AFG Know-How to facilitate participation by clients or agents (or potential clients or agents) in one or more of the Programs;
b.  Produce applications, issued by one or more of the Insurance Companies, to be used in the Programs; and
c.  Collect information from the client or the client's agent (or potential client or agent) for evaluation by AFG and one or more of the Insurance Companies and/or Institutions in order to evaluate client viability for the Programs.

During the term of this Agreement, Authorized Representative is restricted to working exclusively with the Programs with respect to premium financing. Furthermore, Authorized Representative expressly agrees to use sales materials, illustrations, Know-How and other intellectual property, whether or not copyrighted or otherwise protected as intellectual property, that is supplied by AFG or part of AFG's Know-How, only in the promotion of the Programs. During the term of this Agreement, Authorized Representative agrees to and shall not sell or attempt to sell any client any other program similar to the Programs.

## 2.  AUTHORIZED REPRESENTATIVE OBLIGATIONS AND COVENANTS

Authorized Representative specifically does not have the right to incur any expense or obligation whatsoever in the name of AFG or for or on behalf of AFG, without specific advance written authority from AFG.

Authorized Representative agrees to conduct his or her activities in a professional manner and in accordance with all laws and regulations in force in the states in which Authorized Representative markets any Insurance Company products.

Authorized Representative hereby agrees that Authorized Representative shall not solicit any type of premium financing for a client without appropriate licenses, or represent that Authorized Representative, AFG, or Insurance Company can obtain financing of any type to facilitate a client's participation in the Programs.

Authorized Representative agrees not to, and shall not, solicit any business with any AFG

client other than as specifically authorized by this Agreement.

Authorized Representative agrees not to, and shall not, solicit any business with any AFG client with the intention of placing such business with any third party without the knowledge and prior approval of AFG.

Authorized Representative hereby agrees to be the recipient of any and all electronic communications from AFG, whether distributed individually or to a group of Authorized Representatives and/or their employees.

## 3. CONFIDENTIAL INFORMATION

Confidential Information shall include, but not be limited to, documents, records, information and data (whether verbal, electronic or written), drawings, models, apparatus, sketches, designs, schedules, product plans, marketing plans, technical procedures, manufacturing processes, analyses, compilations, studies, software, know-how, and other business information relating to AFG's business, assets, operations or contracts, furnished to Authorized Representative in the course of their work contemplated in this Agreement, regardless of whether such Confidential Information has been expressly designated as confidential or proprietary. Confidential Information also includes any and all analyses, compilations, work product, studies and other data or material prepared by or in the possession or control of the Recipient, which contain, include, refer to or otherwise reflect or are generated from any Confidential Information. Confidential Information may be provided in written, oral, electronic or other form. Recipient acknowledges that no representation may be provided in written, oral, electronic or other form. Recipient acknowledges that no representation or warranty, express or implied, has been or is made by or on behalf of AFG as to the accuracy or completeness of any of the Confidential Information furnished to the Recipient.

## 4. ADVERTISING

Only materials provided or approved in advance by AFG (in AFG's sole discretion) shall be used in marketing or advertising the Programs. If Authorized Representative has any questions on whether any such materials are so approved, Authorized Representative shall inquire directly with AFG before using any such materials. AFG's determination on any such materials shall be final and binding.

## 5. NON-DISCLOSURE

Authorized Representative shall not in any way supply or disclose AFG materials or intellectual property (including without limitation AFG Know-How) to any agents (except those having signed a Selling and Non-Disclosure Agreement similar in substance to this Agreement), insurance company, lender, current or prospective competitor to the Program, or other party not reasonably judged to be an individual client or prospective individual client of AFG.
AFG will not disclose any client financial or other information to any individual or other entity other than that information required by lenders or insurance companies to execute their responsibilities relating to the Program.

## 6.  RELATIONSHIP

This Agreement shall not be construed to create the relationship of employer and employee between AFG and Authorized Representative. Authorized Representative is and shall be considered an independent contractor of AFG for all purposes, it being understood and agreed that Authorized Representative may be an agent or employee of Company or a Field Representative or other agent of Insurance Company. Authorized Representative understands and agrees that this Agreement shall remain in full force and effect upon a sale or any other corporate action taken by Company.

## 7.  LIABILITIES AND INDEMNITY; LIQUIDATED DAMAGES

Authorized Representative shall indemnify and hold AFG, its directors, officers, employees, and agents harmless from any allegations, claims, liabilities, damages, or expenses, including reasonable attorneys' fees and the advancement of same, arising out of (A) any breach of this Agreement by Authorized Representative (whether caused by Authorized Representative or any person under Authorized Representative's control or supervision); (B) any injury that arises as a result of the negligence or willful misconduct of Authorized Representative, Authorized Representative's employees, associates or partners; (C) failure of Authorized Representative, Authorized Representative's employees, associates or partners to comply in any material respect with applicable laws or regulations; and/or (D) any breach of a representation, warranty, or obligation concerning the Program, insurance products, or other aspects of the rights granted Authorized Representative under this Agreement.

**In addition to (and not in lieu of) all other remedies available to AFG hereunder, if Authorized Representative or any Authorized Representative employee or agent breaches or violates any of Authorized Representative's representations or obligations under this Agreement (including without limitation any ongoing obligations after termination of this Agreement for any reason), Authorized Representative agrees to and shall pay to AFG, with respect to each such breach or violation, liquidated damages in the amounts of the greater of: (i) Ten Thousand Dollars ($10,000.00); or (ii) 150% of the revenue derived by Authorized Representative or its employees and/or agents (or such person's new employer or company/person with whom such person becomes affiliated or associated, if not as an employee or agent of Authorized Representative, including without limitation a company owned or controlled by such person), as a result of such breach or violation (which revenue calculation shall include, without limitation, any and all renewal revenue received by Authorized Representative or such company/person).**

Authorized Representative acknowledges and agrees that the restrictions and remedies provided for in this Agreement are reasonable to protect AFG's legitimate business interests. The protection of the Know-How is of material importance to AFG and AFG would not enter into this Agreement and provide the privileges and benefits to Authorized Representative hereunder without Authorized Representative's agreement to abide by and adhere to the provisions of this Agreement, all of which the Authorized Representative understands, acknowledges, and agrees are reasonable to protect the legitimate business interests of AFG.

## 8.  TERM AND TERMINATION

The term of this Agreement shall commence upon the full execution hereof and shall continue until either party terminates this Agreement by giving written notice to the other party of at least one-hundred eighty (180) days prior to such termination date; provided, however, that Authorized Representative agrees to and shall work with AFG in good faith during any such 180-day period to transition all matters pertaining to the Program on which Authorized Representative is involved. Notwithstanding the foregoing, AFG shall have the right to terminate this Agreement immediately upon any breach or violation or purported breach or violation of this Agreement by Authorized Representative.

## 9.  TERMINATION OF AUTHORIZED REPRESENTATIVE BY COMPANY

If AFG terminates this Agreement due to any breach or violation of this Agreement by Authorized Representative, Authorized Representative understands and agrees that Authorized Representative's association with Company shall also be terminated, effective immediately. Company and Authorized Representative understand and agrees that AFG shall have the right to cause such termination of Authorized Representative by Company.

### 9(A). INDEMNIFICATION

Company shall in no event assist Authorized Representative to circumvent the restrictions provided for herein. In the event the Company is proven to have knowingly assisted Authorized Representative in circumventing the restrictions provided by herein, Company shall indemnify AFG against any and all damages, costs, and/or expenses incurred by AFG (including payment and advancement of reasonable attorneys' fees) as a result of the Company's knowing assistance to the Authorized Representative. Nothing herein shall prevent Company from terminating Authorized Representative's association with Company; provided, however, that Company shall immediately inform AFG if Authorized Representative's association with Company is terminated for any reason. This paragraph shall survive termination of this Agreement for any reason.

## 10. RESULTS OF TERMINATION

Upon termination of this Agreement for any reason, neither party shall be excused from any obligation or duty of such party that matured prior to such termination.
Upon termination of this Agreement, Authorized Representative shall not make any further use of AFG's Know-How or hold him/herself out to be associated with or authorized to market the Programs, and all rights granted to Authorized Representative (including Authorized Representative's employees or agents) pursuant to this Agreement shall be deemed to be revoked.

Upon termination of this Agreement for any reason, Authorized Representative shall immediately pay to AFG all sums due, if any, and immediately deliver to AFG all books, computer programs, computer files, spread sheets, letters, records, sales materials and supplies,

including copies of all such, connected with this Agreement or relating to AFG's business and/or the Know-How. All such books, computer programs, computer files, letters, records, and sales materials supplied by AFG, including copies of all such, shall be deemed to be AFG's property at all times.

## 11. NO BYPASS; EXCLUSIVITY

Authorized Representative acknowledges and agrees that any Institution introduced to Authorized Representative by AFG or as a result of this Agreement, and/or any client introduced to the Programs, is a valuable asset of AFG. Authorized Representative therefore agrees that, during the term of this Agreement and for a period of twenty-four (24) months after the termination of this Agreement for any reason, Authorized Representative will not bypass or go around AFG and attempt to contact or establish a relationship with any Institution introduced to Authorized Representative by AFG or as a result of this Agreement for any form or variation of premium financing (but which restriction shall not include Institutions with which Authorized Representative has an existing premium finance relationship, the existence of which has been made clear to AFG prior to entry into this Agreement), or to market or provide to any client any product competitive with the Programs, that does not include AFG or have AFG's consent to do so.

Authorized Representative understands, acknowledges and agrees that AFG's relationships to the Institutions are exclusive to AFG with respect to premium financing, and Authorized Representative shall not accept clients with respect to premium financing except through AFG.

## 12. NON-WAIVER

Forbearance or neglect of AFG to insist upon the performance of any of the terms of this Agreement or to declare a forfeiture or termination against Authorized Representative shall not constitute a waiver of such rights and privileges.

## 13. GOVERNING LAW AND JURISDICTION

This Agreement and all amendments hereto shall be governed by and construed in accordance with the internal laws of the State of Florida, without giving effect to that State's conflict of laws provisions. Any dispute hereunder shall be filed in the appropriate State or Federal Courts located in Broward County, Florida, and each Party consents to such jurisdiction and venue, and neither Party shall raise any objections to such venue as being appropriate. Upon breach or threatened breach of this Agreement by Authorized Representative, AFG shall be entitled to seek equitable relief, in addition to any other remedies it has, without posting any bond or other security.

## 14. ASSIGNMENT; AMENDMENTS

This Agreement may not be assigned by Authorized Representative without the prior

written approval of AFG. Company's obligations hereunder may not be assigned to any third party without the prior written approval of AFG; any such assignment must require that such third party has the ability to and does undertake and assume all of Company's obligations hereunder. This Agreement may not be amended unless in writing signed by all parties to whom such amendment effects or applies.

### 15. NOTICES

All notices, reports, payments, requests, consents, demands and other communications between AFG and Authorized Representative, pertaining to subjects related to this Agreement, shall be in writing and must be delivered (with proof of delivery) to the appropriate party at the address below, or to an alternate address if same is provided in writing as required herein.

AFG's Notification Address:                    18851 NE 29th Ave, Suite # 413
                                                Aventura, FL 33180

### 16. INVALID PROVISIONS; SURVIVAL

All of the provisions of this Agreement are distinct and severable. If any provision (or portion thereof) of this Agreement shall be deemed to be void, invalid or otherwise unenforceable under law or equity in a specific jurisdiction, the same shall not affect the validity, legality or enforceability of any other provision or portion of this Agreement. Any provision or paragraph of this Agreement which, by its terms, should survive termination of this Agreement, shall so survive and continue to be binding.

### 17. ENTIRE AGREEMENT

This Agreement supersedes all prior agreements between the Parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

### 18. SIGNATURES

IN WITNESS WHEREOF, and intending to be legally bound, AFG, Authorized Representative, and (with respect to such provisions applicable to Company only) Company have caused this Selling and Non-Disclosure Agreement to be executed by personal signature or the signature of their duly authorized representative. This Agreement may be executed in counterparts (including those transmitted by electronic means), each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

AUTHORIZED REPRESENTATIVE:                      ARI FINANCIAL GROUP, INC.

Name: _____                  Name: Jaacov E. Bouskila, Principal

Date: 7/27/18                                   Date: 7/27/18

7